IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILLIE HUGHES #289335, | ) |
| Petitioner, | ) |
| | ) NO. 3:20-cv-00765 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| WARDEN KEVIN MYERS, | ) |
| Respondent | ) |

## MEMORANDUM OPINION

Petitioner is a state inmate serving an effective sentence of 29 years in prison for aggravated robbery and failure to appear in court. He filed a pro se Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus ("Petition") and was granted leave to proceed without payment. (Doc. Nos. 1, 5). The Court will deny his Petition for the reasons set forth below.

### I. FACTS AND PROCEDURAL HISTORY

According to the summary of evidence published by the Tennessee Court of Criminal Appeals in Petitioner's direct appeal, this case arises from the knife-point robbery of Maria Jaimes at approximately 6 a.m. on August 18, 2011, outside the Brentwood Magic Cleaners where she worked. (Doc. No. 6-26 at 2). A Black man placed a large knife against the victim's stomach and "demanded that she 'give [him] everything' before taking her iPod, cellular telephone, and handbag." (*Id.*) The assailant ran to a light-colored Chevrolet Blazer parked in front of a nearby hotel and fled the scene with a white shirt concealing the vehicle's license plate. (*Id.*) The victim provided a Brentwood Police Department (BPD) officer with a description of the robber and his vehicle. (*Id.*) The officer asked the victim's cellular carrier to "ping" her telephone's location and determined that the phone was at a location in north Nashville, which he reported to the

Metropolitan Nashville Police Department ("Metro"). (*Id.*) The rest of the investigation is summarized as follows:

> Metro Officers Kevin Cooley and Andrew Johnson arrived at the location at approximately 7:30 a.m., and about 30 minutes later, they observed a grey Blazer pull into the driveway of 1806 Elizabeth Road. The officers approached the driver of the vehicle, who identified herself as Lynne Edmonds. While the officers were speaking with Ms. Edmonds, the defendant walked out of the house and identified himself to the officers. The defendant admitted to Officer Cooley that he had been driving the Blazer earlier that morning. Ms. Edmonds gave officers consent to search the Blazer, and Officer Johnson discovered a large folding knife in the rear of the vehicle. At that point, Metro officers contacted BPD detectives and informed them that "we may have got your guy."
>
> Shortly thereafter, BPD Detective James Colvin arrived at the scene and spoke with the defendant. After Detective Colvin provided the defendant with his *Miranda* warnings, the defendant stated that he had been at the Elizabeth Road residence "[a]ll morning" and adamantly denied any involvement in the robbery. Eventually, the defendant admitted that someone named "K.C." was driving the Blazer that morning, that K.C. had parked in front of the hotel, and that K.C. returned to the Blazer holding a woman's handbag. The defendant insisted that he had never gotten out of the Blazer.
>
> Detective Colvin attempted to locate K.C. without any success, and in his subsequent interview with Ms. Jaimes, she stated that the defendant was the only person she saw in the Blazer.
>
> On August 22, 2011, the defendant requested to speak with Detective Colvin at the Brentwood Police Department. Detective Colvin again administered *Miranda* warnings to the defendant,[1] and the defendant signed a waiver of his rights. Initially, the defendant maintained that the robbery had been K.C.'s idea and that he had remained in the Blazer while K.C. committed the robbery. Upon further questioning by Detective Colvin, the defendant eventually admitted, "It was me, me by myself." The defendant confessed that Ms. Jaimes's cellular telephone and iPod were at the Elizabeth Road residence. Although he was unable to find Ms. Jaimes's handbag, which the defendant stated he had thrown out of the Blazer following the robbery, Detective Colvin recovered the telephone and iPod from the Elizabeth Road residence and returned the items to Ms. Jaimes.

(Doc. No. 6-26 at 2–3).

Petitioner was indicted on one count of aggravated robbery. (Doc. No. 6-1 at 8–9). His

---

[1] The Supreme Court announced in *Miranda v. Arizona*, 384 U.S. 436 (1966), that a defendant must be warned of his right to counsel and to remain silent before a custodial interrogation and that statements elicited in the absence of such warning or in violation of such rights are inadmissible in court.

case was set for trial in October 2012, but he failed to appear in court. (Doc. No. 6-26 at 1). He was eventually taken back into custody, and the trial court ordered him held without bond while he awaited trial. (Doc. No. 6-1 at 39–40). The evidence summarized above was presented at a jury trial in May 2014, after which the jury found Petitioner guilty of aggravated robbery. (Doc. No. 6-1 at 134–35; Doc. No. 6-6 at 61). The trial court sentenced Petitioner to 25 years in prison for that conviction. (Doc. No. 6-2 at 73). In separate proceedings, Petitioner pleaded guilty to failure to appear for his first trial date, and the court sentenced him to 4 years in prison for that offense, to be served consecutively to the aggravated robbery sentence, for an effective total sentence of 29 years. (Doc. No. 6-26 at 1, 3).

Petitioner appealed, asserting trial court errors in the failure to suppress Petitioner's statements to Detective Colvin and the imposition of an excessive sentence. The Tennessee Court of Criminal Appeals affirmed, and the Tennessee Supreme Court denied discretionary review. (Doc. Nos. 6-26, 6-30). Petitioner later filed a pro se petition for post-conviction relief in state court. (Doc. No. 7-1 at 33–79). The trial court appointed counsel, who filed an amended post-conviction petition. (*Id.* at 82–84; Doc. No. 7-2 at 2–9). The court held an evidentiary hearing on the petition and denied relief. (Doc. No. 7-2 at 62–81; Doc. No. 7-3). The Tennessee Court of Criminal Appeals again affirmed, and the Tennessee Supreme Court again denied review. (Doc. Nos. 7-7, 7-11).

Petitioner now seeks relief from this Court, and Respondent acknowledges that his Petition is timely and properly before the Court. (Doc. No. 12 at 2).

## II. ISSUES PRESENTED FOR REVIEW

The Petition asserts three claims for relief:

1. The trial court erred in admitting Petitioner's statements to law enforcement officers in

3

violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution. (Doc. No. 1 at 5–6).

2. Trial counsel was ineffective, in violation of Petitioner's rights under the Sixth and Fourteenth Amendments, for failing to explore and challenge racial bias during jury selection and the lack of diversity among the panel of potential jurors. (*Id.* at 7–9). And

3. Counsel was ineffective for waiving the conflict of interest of a judge on the panel for Petitioner's direct appeal. (*Id.* at 9–11).

## III. STANDARD OF REVIEW

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Upon finding a constitutional error on habeas corpus review, a federal court may grant relief only if it finds that the error "had substantial and injurious effect or influence" on the outcome of the case. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Peterson v. Warren*, 311 F. App'x 798, 803–04 (6th Cir. 2009).

AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases . . . and 'to further the principles of comity, finality, and federalism.'" *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 436 (2000)). AEDPA's requirements "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007) (citations omitted). As the Supreme Court has explained, AEDPA's requirements reflect "the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). Where state courts have ruled on a claim, AEDPA imposes "a

4

substantially higher threshold" for obtaining relief than a de novo review of whether the state court's determination was incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410).

Specifically, a federal court may not grant habeas relief on a claim rejected on the merits in state court unless the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (d)(2). A state court's legal decision is "contrary to" clearly established federal law under Section 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 412–13. An "unreasonable application" occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A state court decision is not unreasonable under this standard simply because the federal court finds it erroneous or incorrect. *Id.* at 411. Rather, the federal court must determine that the state court's decision applies federal law in an objectively unreasonable manner. *Id.* at 410–12.

Similarly, a district court on habeas review may not find a state court factual determination to be unreasonable under Section 2254(d)(2) simply because it disagrees with the determination; rather, the determination must be "'objectively unreasonable' in light of the evidence presented in the state court proceedings.'" *Young v. Hofbauer*, 52 F. App'x 234, 236 (6th Cir. 2002). "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively

5

correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007) (quoting § 2254(d)(2) and (e)(1)); *but see McMullan v. Booker*, 761 F.3d 662, 670 and n.3 (6th Cir. 2014) (observing that the Supreme Court has not clarified the relationship between (d)(2) and (e)(1) and the panel did not read *Matthews* to take a clear position on a circuit split about whether clear and convincing rebutting evidence is required for a petitioner to survive (d)(2)). Moreover, under Section 2254(d)(2), "it is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).

Thus, the standard set forth in 28 U.S.C. § 2254(d) for granting relief on a claim rejected on the merits by a state court "is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington*, 562 U.S. at 102, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). Petitioner carries the burden of proof. *Pinholster*, 563 U.S. at 181.

The review of claims (under this demanding standard) rejected on the merits in state court ordinarily is available only to petitioners who "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). In Tennessee, a petitioner is "deemed to have exhausted all available state remedies for [a] claim" when it is presented to the Tennessee Court of Criminal Appeals. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. Sup. Ct. R. 39). "To be properly exhausted, each claim must have been 'fairly presented' to the state courts," meaning that the petitioner presented "the same claim under the same theory . . . to the state courts." *Wagner v. Smith*, 581 F.3d 410, 414, 417 (6th Cir. 2009) (citations omitted).

6

The procedural default doctrine is "an important 'corollary' to the exhaustion requirement," under which "a federal court may not review federal claims that . . . the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citations omitted). A claim also may be "technically exhausted, yet procedurally defaulted," where "a petitioner fails to present a claim in state court, but that remedy is no longer available to him." *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015) (citing *Jones v. Bagley*, 696 F.3d 475, 483–84 (6th Cir. 2012)).

To obtain review of a procedurally defaulted claim, a petitioner must "establish 'cause' and 'prejudice,' or a 'manifest miscarriage of justice.'" *Middlebrooks v. Carpenter*, 843 F.3d 1127, 1134 (6th Cir. 2016) (citing *Sutton v. Carpenter*, 745 F.3d 787, 790–91 (6th Cir. 2014)). Cause may be established by "show[ing] that some objective factor external to the defense"—a factor that "cannot be fairly attributed to" the petitioner—"impeded counsel's efforts to comply with the State's procedural rule." *Davila*, 137 S. Ct. at 2065 (citations omitted). To establish prejudice, "a petitioner must show not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Garcia-Dorantes v. Warren*, 801 F.3d 584, 598 (6th Cir. 2015) (quoting *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991)) (internal quotation marks omitted). And the manifest-miscarriage-of-justice exception applies "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

7

## IV. ANALYSIS AND DISCUSSION

A. ADMISSION OF PETITIONER'S STATEMENTS TO DETECTIVE COLVIN

Petitioner claims that the trial court should have excluded his statements to Detective Colvin because Petitioner (allegedly) believed, based on comments by Colvin, that the statements were part of plea negotiations between Petitioner and the state. Specifically, Petitioner says that Colvin told him that he could help Petitioner and indicated that he (Colvin) had authority to negotiate a plea deal. (Doc. No. 1 at 5–6). Respondent argues that Petitioner never asserted this claim as a federal constitutional violation in state court, rendering it procedurally defaulted, and that the related claim Petitioner *did* exhaust—error under the state rules of evidence—is not a cognizable federal habeas claim. (Doc. No. 12 at 17–20). Petitioner replies that his current claim is exhausted because (according to him) the claim asserted and considered in state court was "interwoven with federal law." (Doc. No. 21 at 2).

Before trial, Petitioner's counsel filed a motion in limine to exclude Petitioner's statements to police "pursuant to Rule 410 of the Tennessee Rules of Evidence." (Doc. No. 6-1 at 67–84). After the statements were admitted at trial, he raised the claim to the Tennessee Court of Criminal Appeals, again as an alleged violation of "Rule 410 of the Tennessee Rules of Evidence." (Doc. No. 6-24 at 12). The state appellate court rejected that claim on the merits:

> The defendant first contends that the trial court erred by failing to exclude from evidence during his aggravated robbery trial the statements he made to Detective Colvin, claiming that both statements were made during the course of plea negotiations and were therefore inadmissible under Tennessee Rule of Evidence 410. We disagree.
>
> Tennessee Rule of Evidence 410 provides, in pertinent part, as follows:
>
>> Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the party who made the plea or was a participant in the plea discussions:
>>
>> . . . .
>>
>> (4) any statement made in the course of plea discussions with an

> attorney for the prosecuting authority which do not result in a plea
> of guilty or which result in a plea of guilty later withdrawn. . . .

Tenn. R. Evid. 410(4).

The seminal case in Tennessee regarding the exclusion of statements made during the course of plea negotiations is *State v. Hinton*, 42 S.W.3d 113 (Tenn. Crim. App. 2000), in which this court employed a two-prong test for determining whether a statement should be excluded under Rule 410. *Id.* at 121–123. First, the court must "consider the totality of the circumstances and determine whether the defendant exhibited an actual subjective expectation to negotiate a plea at the time of the discussion and whether the expectation was reasonable." *Id.* at 122 (citing *United States v. Robertson*, 582 F.2d 1356, 1366 (5th Cir. 1978)). Second, the court must decide "whether the statement was made in the course of plea discussions 'with an attorney for the prosecuting authority,'" which includes a law enforcement officer acting "under the express authorization of the prosecuting attorney." *Hinton*, 42 S.W.3d at 122–23 (quoting Tenn. R. Evid. 410(4)). The state of the law is quite clear, however, that the protections of Rule 410 "do not encompass statements made during the preliminary investigation process." *Hinton*, 42 S.W.3d at 121 (citing *State v. James Wayne Butler*, No. 01C01–9301–CR–00023, slip op. at 6–7 (Tenn. Crim. App., Nashville, Sept. 9, 1993) (holding that statements made by defendant prior to being charged did not fall under the ambit of Rule 410)); *see also* Neil P. Cohen, et al., *Tennessee Law of Evidence* § 4.10[6][c] (6th ed. 2011) ("To be excluded, the statements or conduct must have been given as part of plea negotiations rather than during the preliminary investigatory process. For example, if a prosecutor participates in a custodial interrogation at a police station and the accused confesses during the questioning, Rule 410 would probably not bar the confession."); *State v. Calvin Person*, No. W2011–02682–CCA–R3–CD, slip op. at 19 (Tenn. Crim. App., Jackson, Oct. 31, 2013) (holding that Rule 410 did not apply to defendant's statement to law enforcement officer when it was given prior to indictment), *perm. app. denied* (Tenn. Mar. 5, 2014); *State v. Charles Vantilburg, III*, No. W2006–02475–CCA–R3–CD, slip op. at 7–8 (Tenn. Crim. App., Jackson, Feb. 12, 2008) (holding that defendant who entered into memorandum of understanding with law enforcement officers prior to his being charged with any crime did not afford him the protections offered by Rule 410), *perm. app. denied* (Tenn. Aug. 25, 2008).

In the instant case, the defendant's initial statements to Detective Colvin were made during the preliminary investigation, only hours after the commission of the armed robbery. Throughout that interview, the defendant maintained his innocence. Although Detective Colvin made several statements about his ability to speak with the district attorney and make recommendations to assist the defendant, Detective Colvin also made it very clear that he was not making any guarantees or promises to the defendant. In the defendant's second interview with Detective Colvin, during which he eventually confessed to the robbery, the detective never mentioned the district attorney's office and instead informed the defendant that he had sufficient evidence to convict him. Significantly, the defendant was not charged with aggravated robbery until October 2011, nearly two months after his interviews with

> Detective Colvin. Without question, the defendant's statements to the detective were made during the initial investigatory process, well before charges were filed, and Rule 410 is simply inapplicable.
>
> The defendant urges this court to extend the holding in *Hinton* to include apparent authority. In support of his position, he relies upon *United States v. Swidan*, 689 F. Supp. 726 (E.D. Mich. 1988), for the proposition that the inquiry under Rule 410 should be whether the officer made statements that could have led the defendant reasonably to believe that the officer had authority to enter plea negotiations. *Id.* at 728. Because we believe the analysis in *Hinton* to be a correct and complete statement of Tennessee law, we decline the defendant's invitation to extend it based upon *Swidan*, which was decided before *Hinton*.

(Doc. No. 6-26 at 3–5).

For a federal habeas claim to be exhausted, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (internal citation omitted). The claim must be presented to the state courts as a federal constitutional issue, not merely as an issue arising under state law. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984). Specifically, in determining whether a petitioner "fairly presented" a federal constitutional claim to the state courts, federal courts should consider whether the petitioner: (1) phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) relied upon federal cases employing the constitutional analysis in question; (3) relied upon state cases employing the federal constitutional analysis in question; or (4) alleged "facts well within the mainstream of [the pertinent] constitutional law." *Hicks v. Straub*, 377 F.3d 538, 553 (6th Cir. 2004) (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). The claim must be presented to the state courts under the same legal theory with which it is later presented in federal court. *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). Its presentation in federal court cannot rest on a legal theory that is separate and distinct from the one previously considered and rejected in state court. *Id.* This does not mean that the petitioner must recite "chapter and verse" of constitutional law, but he is required to make a specific showing of

10

the alleged claim to the state courts. *Wagner*, 581 F.3d at 414.

Petitioner never phrased this claim as a federal constitutional claim in state court. *Hinton*, the "seminal case" that he cited and the state appellate court applied, is a state court opinion that observes that the applicable Tennessee rules "are identical to the federal rules by design" and that, consequently, "federal developments are instructive." *Hinton*, 42 S.W.3d at 122. Accordingly, *Hinton* relies in part on analyses in several federal opinions. *Id.* (citing *United States v. Robertson*, 582 F.2d 1356, 1365 (5th Cir. 1978), *United States v. Grant*, 622 F.2d 308, 312 (8th Cir. 1980), *United States v. O'Brien*, 618 F.2d 1234, 1240–41 (7th Cir. 1980), and *United States v. Pantohan*, 602 F.2d 855, 857 (9th Cir. 1979)). But the cited portions of each of those federal cases concern application of Rule 11(e) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence. *Robertson*, 582 F.2d at 1365; *Grant*, 622 F.2d at 312; *O'Brien*, 618 F.2d 1240–41 and n.4; *Pantohan*, 602 F.2d at 857. They do not employ any federal *constitutional* analysis. And *Hinton* expressly distinguishes between a defendant's constitutional rights under the Fifth Amendment, which are protected by *Miranda* warnings, and the separate rights conveyed by the procedural and evidentiary rules in question, which are not. *Hinton*, 42 S.W.3d at 125.

The Court concludes, therefore, that the claim Petitioner exhausted in state court did not include any federal constitutional claim and was not "interwoven" with federal constitutional analysis (even if it was interwoven with federal *rules*) as required for the current claim to be considered properly exhausted. And any effort by Petitioner to raise the current (federal constitutional) claims in state court now would be untimely and precluded by Tennessee's "one-petition" limitation on post-conviction relief. Tenn. R. App. P. 4; Tenn. Code Ann. §§ 40-30-102(a), (c). Because Petitioner did not fully and fairly present this claim to the state courts and is now prohibited from doing so by state procedural rules, the claim is deemed exhausted (because there is no "available" state remedy) but procedurally defaulted from federal habeas review. *See Coleman v. Thompson*, 501 U.S. 722,

11

752-53 (1991); *Atkins v. Holloway*, 792 F.3d 643, 657 (6th Cir. 2015). Petitioner does not assert any excusable cause for this default, and none is apparent from the record.

Moreover, the claim Petitioner *did* exhaust without defaulting—a claim based on a state rule of evidence—cannot support a grant of federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (holding that determining whether evidence was incorrectly admitted under state law "is no part of a federal court's habeas review of a state conviction" and reemphasizing that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Accordingly, the Court will deny relief on this claim.

B.      INEFFECTIVENESS OF COUNSEL REGARDING RACE IN JURY SELECTION

Petitioner alleges that he was tried by an all-white jury because his trial attorney failed to "explore racial bias during jury selection" and to "challenge the lack of diversity in the venire." (Doc. No. 1 at 7–9). He faults counsel for failing to "put forth proof showing that African-Americans were systematically excluded from the venire process" in a motion for change of venue or motion "to seek a jury pool from a neighboring county to ensure that the petitioner was provided his right to a fair trial." (*Id.* at 8). Petitioner alleges that he was prejudiced by these failures because "there is a reasonable probability that an African-American juror would have been more understanding of the petitioner's social and economic status, and would have understood the plight of the petitioner." (*Id.*) Respondent does not dispute that these related claims were properly exhausted in state court, but he argues that the state court's rejection of them was "neither contrary to nor an unreasonable application of clearly established Supreme Court precent, [so]Petitioner is unentitled to habeas corpus relief." (Doc. No. 12 at 20).

All federal claims of ineffective assistance of counsel are subject to the highly deferential (to counsel) two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which asks:

12

(1) whether counsel was deficient in representing the defendant; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the defendant of a fair proceeding. *Id.* at 687. To meet the first prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* at 688, 689. The "prejudice" component of the claim "focuses on the question of whether counsel's deficient performance renders the result of the . . . proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Prejudice, under *Strickland*, requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

> The Supreme Court has further explained the *Strickland* prejudice requirement as follows:
>
> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." The likelihood of a different result must be substantial, not just conceivable.

*Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (internal citations omitted). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be

13

so, that course should be followed." *Strickland*, 466 U.S. at 697.

As discussed above, however, a federal court may not grant habeas relief on a claim that has been rejected on the merits by a state court, unless the petitioner shows that the state court's decision "was contrary to" law clearly established by the United States Supreme Court, or that it "involved an unreasonable application of" such law, or that it "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. § 2254(d)(1) and (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Thus, when an exhausted claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. As the Supreme Court clarified in *Harrington*,

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id.* (internal quotation marks and citation omitted).

In its review of the denial of relief on these claims in Petitioner's post-conviction appeal, the Tennessee Court of Criminal Appeals accurately identified and summarized the *Strickland* standard. (Doc. No. 7-7 at 8–9). It then analyzed and rejected Petitioner's claims on their merits:

### A. Failure to explore racial bias during jury selection

> Petitioner asserts that trial counsel rendered ineffective assistance by failing to explore racial bias during jury selection. Petitioner contends that an "all-white jury" was selected and that trial counsel made no effort to question the jury regarding racial bias during voir dire. Citing *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017), Petitioner asserts that trial counsel had a duty to investigate any possible

14

racial bias by asking questions during voir dire to explore such a topic. He contends that such an omission by trial counsel "render[ed] the trial process suspicious and unreliable."

In *Pena-Rodriguez*, two jurors told defense counsel, after the discharge of the jury, that another juror had expressed anti-Hispanic bias against the petitioner and his alibi witness. *Id.* at 861. Defense counsel obtained affidavits from the jurors describing a number of biased statements made by the juror in question, which were submitted to the trial court. *Id.* at 861-62. The trial court acknowledged the juror's apparent bias but, nonetheless, decided it could not consider the affidavits under Colorado's "no-impeachment rule" that prohibited inquiry into statements made by jurors during deliberations. *Id.* at 862. The Supreme Court considered whether an exception to the no-impeachment rule was constitutionally required "when a juror's statements indicate that racial animus was a significant motivating factor in his or her finding of guilt." *Id.* at 867. The Court noted that racial bias was a "familiar and recurring evil that, if left unaddressed, would risk systemic injury to the administration of justice." *Id.* at 868. Thus, the Supreme Court held that "where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal, the Sixth Amendment requires that the no-impeachment rule give way in order to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee." *Id.* at 869.

In addressing Petitioner's claim, the post-conviction court stated:

> [Petitioner] also submits [trial counsel] was ineffective for not exploring areas of racial bias during voir dire and relies heavily on *Pena-Rodriguez* . . . for the proposition that racial bias must be addressed as a constitutional safeguard. The [c]ourt finds that while such a requirement was announced in *Pena-Rodriguez*, it was premised upon a finding that "one or more jurors made statements exhibiting overt racial bias that cast serious doubt on the fairness and impartiality of the jury's deliberations and resulting verdict." *Id.* at 869. This prerequisite is at odds with the facts of the case at bar wherein there is no indication any jurors made overt racial remarks or exhibited improper racial behavior. Therefore, the [c]ourt does not find [trial counsel] was deficient for not questioning jurors about any racial bias.

The record does not preponderate against the post-conviction court's finding that there was no indication any jurors made overt racial remarks or exhibited improper racial behavior. Trial counsel testified that, although he did not discuss race with potential jurors, he would have questioned any juror about racial bias if he had heard anything indicating a possible bias during his questioning. Moreover, Petitioner presented no proof at the evidentiary hearing that racial animus was a significant motivating factor in one or more jurors' finding of guilt. Petitioner contends that trial counsel had a duty to explicitly ask about racial bias during voir dire based on *Pena-Rodriguez*. We disagree; *Pena-Rodriguez* does not mandate such an inquiry by trial counsel. In *Pena-Rodriguez*, the Court specifically noted "the dilemma faced by trial court judges and counsel in deciding whether to explore

15

potential racial bias at voir dire." *Id.* (citing *Rosales-Lopez v. United States*, 451 U.S. 182 (1981); *Ristaino v. Ross*, 424 U.S. 589 (1976)). The Court explained that "[g]eneric questions about juror impartiality may not expose specific attitudes or biases that can poison jury deliberations. Yet more pointed questions 'could well exacerbate whatever prejudice might exist without substantially aiding in exposing it.'" *Id.* (quoting *Rosales-Lopez*, 451 U.S. at 195 (Rehnquist, J., concurring in result)).

Petitioner has failed to establish deficient performance and resulting prejudice under *Strickland*, based on trial counsel's failure to explore racial bias during jury selection. He is not entitled to relief.

### B. Failure to challenge the lack of diversity in the venire

Petitioner also argues that he was denied the effective assistance of counsel based on trial counsel's failure to challenge the makeup of the jury venire. He contends that trial counsel should have examined whether African Americans had been systematically excluded from the jury selection process in Williamson County.

In addressing this issue, the post-conviction court found:

> At the post-conviction hearing, [trial counsel] stated he did not challenge the lack of diversity in the jury venire based on the census records in Williamson County showing a relatively small minority population. Therefore, [trial counsel] did not believe it was an odd occurrence for there to be very few minority jurors in a given venire.
>
> . . . .
>
> [Petitioner] has failed to meet his burden and show the fair-cross-section-requirement of the Sixth Amendment of the United States Constitution has been violated by any systematic exclusion of a minority group. To the contrary, the [c]ourt takes judicial notice of the overwhelmingly large number of Caucasian individuals residing in Williamson County, Tennessee. The United States Census Bureau shows that 84.8 percent of persons residing in Williamson County are of a Caucasian origin; 4.5 percent are black; 0.3 percent is American Indian and Alaskan Native; 0.1 percent is Native Hawaiian; 1.7 percent is two or more races; and 4.8 percent are Hispanic or Latino.
>
> The [c]ourt finds any underrepresentation of a minority presence in [Petitioner's] trial was not due to a systematic exclusion of any given group, but instead was the result of the actual makeup of the Williamson County community which was fairly represented to [Petitioner] during voir dire.

In this case, trial counsel testified that he researched the issue by checking census records for Williamson County. He stated that, "given the small minority population," it was "not an odd occurrence for there to be very few minority jurors -- potential jurors in a venire[.]" Trial counsel testified that he found no evidence that African Americans had been systematically excluded from the jury selection

16

> process in Williamson County, and Petitioner presented no evidence to the contrary at the post-conviction hearing. Thus, Petitioner has failed to establish deficient performance and prejudice under *Strickland*. He is not entitled to relief based on this claim.

(*Id.* at 9–11).

Petitioner asserts that this ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." (Doc. No. 1 at 7). But, other than passing references to *Strickland* and *Pena-Rodriguez*, he does not cite or discuss any Supreme Court precedent to support his position. And neither one of these cases supports his claim. The *Strickland* standard itself is "a general standard" that provides state courts broad latitude to determine whether it is satisfied. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). And, for the reasons explained by the Tennessee Court of Criminal Appeals, *Pena-Rodriguez* does not dictate a finding of ineffectiveness where there was no evidence or suggestion of racial animus among the potential jurors. As the United States Court of Appeals for the Sixth Circuit has explained, the holding of "*Pena-Rodriguez* makes clear that it . . . [applies] only to a 'clear statement' that 'tend[s] to show that racial animus was a significant motivating factor in the juror's vote to convict.'" *United States v. Robinson*, 872 F.3d 760, 770 (6th Cir. 2017). Accordingly, in a case in which a habeas petitioner "offers no evidence whatsoever to suggest that an impaneled juror was biased" against him, "there is no basis for concluding that trial counsel were ineffective in failing to question potential jurors regarding their views on race, let alone that the [state court's] resolution of this matter was unreasonable." *Stojetz v. Ishee*, 892 F.3d 175, 194 (6th Cir. 2018).

A review of the post-conviction record confirms that Petitioner did not offer any proof that minorities were systematically excluded from the venire or that either the venire or the jury were infected with racial bias against him. Petitioner's testimony on that point was simply "I think I

17

should have a black juror on the – at least to select from from the jury for us." (Doc. No. 7-3 at 24–25). Counsel testified that he looked into whether he could raise an issue about "there not being very many possible minority jurors," but he decided that "there was just simply no evidence" that minorities had been systematically excluded from the venire. (*Id.* at 105). He also testified that he saw no need to question the potential jurors about race but that "if I heard anything when I was questioning them or if I heard anything when [the prosecutor was] questioning them that gave me a belief that they might be prejudiced, I certainly would have either made a challenge for cause or stricken them with one of my strikes." (*Id.* at 107).

In summary, the state court reasonably concluded that Petitioner had failed to establish that his trial attorney's performance was deficient because he did not explore racial bias during jury selection or challenge the lack of diversity in the venire. And because the state court reasonably concluded that Petitioner had failed to demonstrate any violation of his constitutional rights in connection with the racial composition of his venire or the jury that convicted him, the state court also reasonably concluded that Petitioner had failed to establish prejudice from the alleged deficient performance Therefore, Petitioner is not entitled to relief on this claim.

C.    INEFFECTIVENESS OF COUNSEL REGARDING JUDGE'S CONFLICT

Finally, Petitioner claims that counsel was ineffective for failing to assert a conflict of interest on the part of one of the judges on the panel for his direct appeal. (Doc. No. 1 at 9–11). Petitioner acknowledges that this claim is procedurally defaulted but asserts that the default is excusable under *Martinez v. Ryan*, 566 U.S. 1 (2012). (*Id.*) The Supreme Court announced in *Martinez* that the ineffectiveness of post-conviction counsel can sometimes establish cause "to consider the merits of a claim that otherwise would have been procedurally defaulted." *Id.* at 17. But Petitioner's argument fails for at least two reasons.

18

First, *Martinez* applies to claims of attorney ineffectiveness at the trial level, not the appellate level. *Davila v. Davis*, 137 S. Ct. 2058, 2065–66 (2017) (quoting *Martinez*, 566 U.S. at 15, for the proposition that its holding "applies only to claims of 'ineffective assistance of counsel at trial'" and refusing to extend *Martinez* to cover claims of ineffective assistance on appeal). Accordingly, *Martinez* cannot provide cause to excuse the default of this claim of ineffectiveness in the context of Petitioner's direct appeal.

Second, even if *Martinez* permitted further consideration of this claim, it would fail for lack of any prejudice arising from the allegedly deficient performance by counsel. Petitioner complains that Judge Easter had an actual conflict of interest due to his previous judicial interactions with Petitioner and claims counsel was ineffective for waiving that conflict. But the record establishes that Judge Easter did not participate in the ruling on Petitioner's direct appeal, and that both other judges on the panel agreed in the ruling against Petitioner. (*See* Doc. No. 6-26 at 1 ("Timothy L. Easter, J., not participating.")). Accordingly, even assuming that a conflict existed, and assuming that counsel performed deficiently in addressing (or not addressing) the conflict, there is no chance at all that it affected the outcome of Petitioner's case as required to warrant relief under *Strickland* pursuant to the standard set forth above.

The Court will deny relief on this claim.

## V. CONCLUSION

Petitioner's habeas claims fail on their merits or are foreclosed from habeas review for the reasons set forth above. Accordingly, the Court will deny the requested relief and dismiss the Petition.

19

An appropriate Order will enter.

_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE